UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR A.,[1]<br>       Plaintiff<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 2:21-cv-07482-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Victor A. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 17] and briefs [Dkts. 15 ("Pl. Br."), 20 ("Def. Br.") & 21 ("Reply")] addressing disputed issues in the case.  The matter is now ready for decision.  For the reasons set forth below, the Court finds that this matter should be affirmed.

---

[1]   In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for DIB and SSI on December 5, 2019, alleging disability beginning October 18, 2019. [Dkt. 13, Administrative Record ("AR") 36, 154-59, 208-09.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 36, 117-21, 124-36.] A telephone hearing was held before Administrative Law Judge James Carberry ("the ALJ") on December 17, 2020. [AR 36, 50-68.]

On January 6, 2021, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. [AR 36-43.] *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 18, 2019, the alleged onset date. [AR 38.] At step two, the ALJ determined that Plaintiff has the following severe impairments: coronary artery disease; congestive heart failure; and diabetes mellitus. [AR 39.] At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations. [AR 39.] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except he is precluded from climbing ladders, ropes and scaffolds and working around unprotected heights and dangerous machinery and he is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking 2 out of 8 hours, sitting 6 out of 8 hours, and occasionally balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. [AR 40.] At step four, the ALJ determined that Plaintiff is able to perform his past relevant work as a telephone solicitor, as actually and generally performed. [AR 42-43.] Based on these findings, the ALJ concluded that Plaintiff was not disabled from the alleged onset date, October 18, 2019, through the date of the decision, January 6, 2021.

[AR 43.]

The Appeals Council denied review of the ALJ's decision on July 26, 2021. [AR 1-7.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ failed to obtain and evaluate the complete medical record.
2. The Appeals Council failed to consider new and material evidence.
3. The ALJ erred in determining Plaintiff's RFC.

The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("[s]ubstantial evidence is more than a mere scintilla but less than a preponderance") (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "'the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). However, the Court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely."

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.   DISCUSSION

### A.   New Evidence before the Appeals Council

Plaintiff contends that remand for further proceedings is required because the Appeals Council failed to properly "consider" and designate as exhibits certain new medical evidence that Plaintiff submitted after the ALJ rendered his decision. [Pl. Br. at 11-12; AR 1698-1713.]

The Regulations govern when the Appeals Council is obligated to review additional evidence. *See* 20 C.F.R. §§ 404.970, 416.1470 (effective January 17, 2017). The Appeals Council "will review a case if ... the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, [ ] there is a reasonable probability that the additional evidence would change the outcome of the decision," and there is "good cause" for not submitting the new evidence earlier. 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b).

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of Section 404.970 or Section 416.1470, a remand for further administrative proceedings is appropriate. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). A claimant has the burden to demonstrate the new evidence should have been considered for the first time by the Appeals Council. *See Garcia v. Saul*, No. 1:19-CV-1103-JLT, 2021 WL 223205, at *4 (E.D. Cal. Jan. 22, 2021).

The Ninth Circuit has distinguished between evidence the Appeals Council

4

"considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record. Evidence "considered" by the Appeals Council becomes part of the administrative record, as "evidence upon which the findings and decision complained of are based." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). But if "the Appeals Council only looked at the evidence ... the new evidence [does] not become part of the record" and the Court "may not consider it." *Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018); *de Orozco v. Comm'r of Soc. Sec.*, No. 1:18-CV-00817-SAB, 2019 WL 2641490, at *11 (E.D. Cal. June 27, 2019) (observing that the Ninth Circuit distinguished between instances where the Appeals Council formally considered evidence and made it part of the administrative record with instances where the Appeals Council only looked at the evidence).

Plaintiff was represented by an attorney at the hearing on December 17, 2020. [AR 36, 50-68.] After the ALJ issued the decision on January 6, 2021, Plaintiff requested Appeals Council review and retained new counsel. [AR 49, 206-07, 356-57.] Plaintiff submitted to the Appeals Council a brief and three Los Angeles County/USC Medical Center records, including cardiology reports dated October 21, 2020 and March 3, 2021, and a primary care provider report of a telephone visit dated December 2, 2020. [AR 356-57, 1698-1711.]

On July 26, 2021, the Appeals Council denied Plaintiff's request for review. [AR 1-7.] The Notice of Appeals Council Action states that it considered the reasons why Plaintiff disagreed with the ALJ's decision and exhibited them on the Order of the Appeals Council, but it concluded that "the reasons did not provide a basis for changing the [ALJ's] decision." [AR 1.] The Appeals Council also acknowledged the submission of the three additional medical records, but it did not designate the records as exhibits. [AR 2, 5.] The Appeals Council explained that the new medical evidence did not provide a basis for reviewing the ALJ's decision, as follows:

> You submitted treatment records from USC Cardiology, dated October 21, 2020 through December 2, 2020 (6 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted Medical Records from USC Cardiology, dated March 3, 2021 (10 pages). The Administrative Law Judge decided your case through January 6, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 6, 2021.

[AR 2.]

The Notice of Appeals Council Action indicates that the Appeals Council "looked" at the new medical records in concluding that it was not likely to affect the ALJ's decision, but it did not "consider" the new records or make them part of the record. *See Amor*, 743 F. App'x at 146; *see Garcia*, 2021 WL 223205, at *4 (finding no error by the Appeals Council "in merely looking at the evidence and not incorporating it as exhibits into the administrative record"); *Matias v. Saul*, No. CV 19-00575 LEK-KJM, 2021 WL 531238, at *5 (D. Haw. Feb. 12, 2021) (construing the Appeals Councils statement that it did not "exhibit" newly submitted medical evidence because it did "not show a reasonable probability that it would change the outcome of the decision," as indicating that the Appeals Council merely "looked at" the additional medical evidence but did not "consider" it). Although the new medical records were listed in the Court Transcript Index, they did not become part of the record, as the Appeals Council did not exhibit them or list them in the Appeals Council's Exhibit List. [AR 5.] *See Guzman v. Kijakazi*, No. 1:20-CV-0514 JLT, 2021 WL 6062645, at *3 (E.D. Cal. Dec. 22, 2021) (interpreting Appeals Council statement that it "did not exhibit this evidence" to mean the Council "did not consider the evidence but merely looked at it").

Plaintiff asserts that the Appeals Council's failure to consider the additional

medical evidence requires remand for further proceedings. He argues that the new medical records show "the extent of Plaintiff's cardiac decompensation prior to the ALJ hearing and continuing after the hearing" and there is "a reasonable probability" the newly submitted evidence would "change the outcome of the case when considered." [Pl. Br. at 12; Reply at 5.] Plaintiff points out that the two new cardiology reports (dated October 21, 2020 and March 1, 2021) reflect that Plaintiff underwent a transthoracic echocardiogram on October 1, 2020 and his ejection fraction[2] was estimated at 20 percent. [AR 1699, 1711.]

Plaintiff fails to meet his burden of showing that the new evidence should have been considered by the Appeals Council. *See Garcia*, 2021 WL 223205, at *4. Significantly, the new cardiology reports indicate that Plaintiff's October 1, 2020 echocardiogram showed "no appreciable changes," as compared to Plaintiff's prior study. [AR 1699, 1711.] Indeed, Plaintiff's echocardiogram from October 1, 2020, like his echocardiogram from November 26, 2019, indicate that Plaintiff had an estimated ejection fraction of 20 percent, left ventricle with moderately increased cavity size, severe diffuse hypokinesis, grade III diastolic function, right ventricle with severely reduced systolic function, left atrium moderately dilated, right atrium severely dilated, aortic valve with trivial regurgitation, mitral valve with mild regurgitation, and tricuspid valve with mild-moderate regurgitation. [AR 428, 1711.] Thus, Plaintiff has failed to show there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Further, the record does not contain any evidence that Plaintiff satisfied his burden of showing good cause for the failure to present the additional medical evidence earlier. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

---

[2] Ejection fraction refers to the percentage of blood pumped out of the heart with each contraction. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00D(1)(a)(i).

1     Accordingly, the Appeals Council did not err in failing to remand the case for
2  further proceedings.  *See* 20 C.F.R. §§ 404.970, 416.1470.

**B.     Development of the Medical Record**

Plaintiff contends that the ALJ failed to fully develop the record by obtaining all of Plaintiff's treatment records.  [Pl. Br. at 9-11.]

According to Plaintiff, his October 1, 2020 echocardiogram, as documented in the October 21, 2020 cardiology report that was submitted to the Appeals Council, establishes that he meets the requirements of Listing 4.02 for chronic heart failure.  [Pl. Br. at 9-11; AR 1711.]  Plaintiff claims that he has "listing level systolic failure," as his estimated ejection fraction was "20% during a period of stability."  [Pl. Br. at 10.]  Plaintiff argues that the ALJ should have known that this "critical medical information was missing," because a June 2020 treatment note indicated that Plaintiff had a reduced ejection fraction and could be reevaluated after September 30, 2020.  [Pl. Br. at 10 (citing AR 1622).]

"[T]he ALJ has a special duty to develop the record fully and fairly and ensure that the claimant's interests are considered."  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Id.* at 459-60.

Here, Plaintiff has failed to demonstrate that the record was ambiguous or inadequate to allow for proper evaluation of his claim.  The ALJ obtained and reviewed Plaintiff's medical records but found no ambiguities, inadequacies, or conflicts in the record that had to be resolved.  The ALJ even asked Plaintiff's counsel about medical records documenting Plaintiff's ejection fraction at the hearing.  [AR 53-54, 62.]  Plaintiff's counsel failed to inform the ALJ that any medical records were missing.  Plaintiff's argument that the ALJ should have known medical records were missing is conclusory and not supported by the record.

Further, even if the ALJ erred by failing to develop the record, any error was

1  harmless. *See Brown-Hunter*, 806 F.3d at 492; *Garcia v. Comm'r of Soc. Sec.*, 768
2  F.3d 925, 932 n.10 (9th Cir. 2014) (stating that legal error in failing to develop the
3  record is subject to the traditional harmless error analysis). As noted above,
4  Plaintiff's October 1, 2020 echocardiogram showed "no appreciable changes
5  compared to [his] prior study." [AR 1711.] Plaintiff's echocardiogram in October
6  2020, like his echocardiogram in November 2019 showed an estimated ejection
7  fraction of 20 percent. [AR 428, 1711.] The ALJ acknowledged at the hearing and
8  in the decision that Plaintiff's had an estimated ejection fraction of just 20 percent in
9  November 2019. [AR 41, 53-54, 61-62.]

Moreover, evidence of a low ejection fraction, without more, does not satisfy the requirements of Listing 4.02 for chronic heart failure. To be disabled under Listing 4.02, a claimant must satisfy one set of criteria in Paragraph A of Listing 4.02 (requiring medical evidence of systolic or diastolic failure) and one set of criteria Paragraph B of Listing 4.02 (describing symptoms and signs of heart failure), while on a regimen of prescribed treatment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02. Paragraph A of Listing 4.02 requires medically documented evidence of either: 1) Systolic failure "with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)" or 2) Diastolic failure, "with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure)." *Id.* Paragraph B of Listing 4.02 requires one of the following: 1) "Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC [medical consultant], …, has concluded that the performance of an exercise test would present a significant risk to the individual;" or 2) "Three or more separate episodes of acute congestive heart failure

within a consecutive 12-month period, … with evidence of fluid retention …, requiring acute extended physician intervention…;" or 3) "Inability to perform an exercise tolerance test at a workload equivalent to 5 METs (metabolic equivalents) or less due to: a. Dyspnea, fatigue, palpitations, or chest discomfort; or b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise … due to left ventricular dysfunction, despite an increase in workload; or d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion." *Id.*

Here, even if Plaintiff's estimated ejection fraction of 20 percent establishes systolic failure as described in Paragraph A of Listing 4.02, there is no evidence that any of the Paragraph B criteria in Listing 4.02 are satisfied. Plaintiff cites no evidence that a medical consultant opined Plaintiff could not perform an exercise test, Plaintiff had three or more separate episodes of acute congestive heart failure in a 12-month period, or Plaintiff could not perform an exercise tolerance test at a workload equivalent to five METs or less. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02B. Although Plaintiff claims that the ALJ ignored his complaints of "dizziness and brain fog," Plaintiff's subjective complaints do not satisfy the criteria in Paragraph B of Listing 4.02. Because Plaintiff has failed to show how the missing medical evidence would have affected the ALJ's determination, any error in the ALJ's failure to develop the record was harmless. *See Brown-Hunter*, 806 F.3d at 492; *Garcia*, 768 F.3d at 932 n.10.

### C. The ALJ's RFC Determination

Plaintiff contends that the ALJ improperly ALJ ignored his subjective complaints in assessing his RFC and, consequently, posed an incomplete hypothetical question to the vocational expert. [Pl. Br. at 13-15.]

10

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-9p, 1996 WL 374184, at *1 (S.S.A. 1996). An RFC reflects the most a claimant can do despite his limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).

"The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

At the hearing, Plaintiff testified that he experiences shortness of breath, fatigue, and brain fog. [AR 63-64.] He stated that he needs to take a break after 10 to 15 minutes of activity and he cannot work because his circulatory system would fail. [AR 64-65.] In an Exertion Questionnaire, Plaintiff reported that he struggles with dizziness from his medication, shortness of breath, and water retention. [AR 254-56.] Plaintiff also stated that he can climb four stairs, walk 20 to 30 minutes to the store with rests, and clean his home with rests. [AR 254-55.]

The ALJ assessed Plaintiff with an RFC for a limited range of sedentary work. [AR 40.] This RFC assessment reflects all of Plaintiff's limitations that the ALJ found to exist. [AR 40.] In making this determination, the ALJ provided legally sufficient reasons for rejecting Plaintiff's subjective complaints of dizziness, brain fog, and other symptoms. [AR 39-40.]

The evaluation of a claimant's subjective symptom testimony requires a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); 20 C.F.R. §§ 404.1529, 416.929. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment, 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first step and

11

there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, 2017 WL 5180304, *4 (S.S.A. Oct. 25, 2017) (explaining that the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms ... and determine the extent to which [those] symptoms limit [his] ... ability to perform work-related activities").

Here, the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were unsupported by the medical evidence of record. [AR 40-42.] The ALJ may consider objective medical evidence when assessing a claimant's testimony. *See* 20 C.F.R. §§ 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work…"), 416.929(c)(2) (same); *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). While Plaintiff produced objective medical evidence to support some degree of pain and other symptoms, the ALJ found that Plaintiff's treatment records revealed generally unremarkable physical exams after he began receiving regular treatment for his cardiac condition. [AR 42, 427, 835, 931, 936, 946, 1494.] The ALJ noted that Plaintiff denied shortness of breath on multiple occasions and the medical records did not support Plaintiff's allegations of dizziness, brain fog or side effects from medications. [AR 42, 427, 931, 936, 946, 1494.] The ALJ properly considered the medical reports and clinical findings (or a lack thereof) to conclude that Plaintiff did not exhibit the limitations and symptoms consistent with his subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Although

the medical evidence could give rise to inferences more favorable to Plaintiff, the ALJ's interpretation was rational and should be upheld. *See Burch*, 400 F.3d at 680.

The ALJ also found Plaintiff's admitted activities of daily living were inconsistent with his allegations of disability. [AR 41-42.] One of the factors that an ALJ may consider in weighing a claimant's subjective symptom testimony is the inconsistency between the testimony and the claimant's statements to others. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ noted that in November 2019, Plaintiff reported to his doctor that he was able to perform his daily activities "without much issue" and could walk up to two miles without shortness of breath. [AR 41, 427.] In January 2020, Plaintiff stated that he was still working full-time as a driver. [AR 41, 931.] Plaintiff also reported that he was able to walk three to four blocks without shortness of breath in January, April, and July of 2020. [AR 41-42, 931, 936, 1494.] In his Exertion Questionnaire, Plaintiff stated that he was able to clean his home, which included mopping, sweeping, and cleaning the shower, with rest periods. [AR 40-41, 254-55.] Thus, the ALJ properly considered the extent of Plaintiff's daily activities in discounting Plaintiff's subjective symptom testimony. [AR 40-42]; *Morgan*, 169 F.3d at 599-600.

Because the ALJ gave legally sufficient reasons for disregarding Plaintiff's subjective complaints, the ALJ did not err in assessing Plaintiff's RFC or by posing a hypothetical question to the vocational expert that did not include Plaintiff's complaints of dizziness, brain fog, and other symptoms. *See Smolen*, 80 F.3d at 1291.

Next, Plaintiff contends that the ALJ's RFC assessment was erroneous because the ALJ failed to assess Plaintiff's limitations on a function-by-function basis pursuant to SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). [Pl. Br. at 13.] Plaintiff's argument lacks merit, as the ALJ set forth a function-by-function analysis of Plaintiff's abilities in the decision. The ALJ determined that Plaintiff

1  can perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a),
2  except he is precluded from climbing ladders, ropes and scaffolds and working
3  around unprotected heights and dangerous machinery and he is limited to lifting and
4  carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or
5  walking 2 out of 8 hours, sitting 6 out of 8 hours, and occasionally balancing,
6  stooping, kneeling, crouching, crawling, and climbing of ramps and stairs.  [AR 40.]
7  The ALJ was not required to prepare "a function-by-function analysis for medical
8  conditions or impairments that the ALJ found neither credible nor supported by the
9  record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Buckner-Larkin
10 v. Astrue*, 450 F. App'x 626, 627 (9th Cir. 2011) (finding ALJ's determination that
11 claimant had an RFC to perform "sedentary work" pursuant to 20 C.F.R. §
12 404.1567(a) was a sufficient function-by-function assessment, as the definition of
13 "sedentary [work] ... includes well-defined function-by-function parameters").

   Plaintiff also challenges the vocational expert's testimony that Plaintiff could perform his past work as a telephone solicitor.  [Pl. Br. at 13-14.]  Plaintiff argues that "[t]here is no detailed information or questioning in the record that describes how Plaintiff actually performed" his prior job or about "the actual job requirements," such as information about quotas, pace, and rest periods.  [Pl. Br. at 14.]  However, it was Plaintiff's burden at step four to establish that he could no longer perform his past work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  Moreover, Plaintiff's testimony and work history report provided significant evidence as to how Plaintiff actually performed his past job.  At the hearing, Plaintiff labeled his prior work as a "call center representative" for Direct TV and described his job as follows:  "clients would contact the call center for other programming[,] for the costs and billings and … for removal of the programming." [AR 54-55.]  In his work history report, Plaintiff described the duties of the call center job as:  satellite service calls; offers for HBO, Starz, Cinemax, and special programs; accepting payments; discontinuing service; and equipment exchanges.

14

[AR 243.] Plaintiff reported that the job involved eight hours of sitting, reaching, writing, typing, or handling small objects and lifting less than 10 pounds. [AR 243.] The vocational expert classified Plaintiff's past job as "telephone solicitor," number 299.357-014 in the Dictionary of Occupational Titles ("DOT") and testified that a person with Plaintiff's RFC could perform that job as actually performed by Plaintiff at the sedentary level. [AR 55, 61.] Thus, substantial evidence supported the ALJ's determination that Plaintiff could perform his past work as actually performed.

Further, any asserted error in determining that Plaintiff could perform his past work as actually performed was harmless, as substantial evidence supports the ALJ's determination that Plaintiff could perform his past work as a telephone solicitor as it is generally performed in the national economy. [AR 43, 61]; *see Brown-Hunter*, 806 F.3d at 492; SSR 82-62, *3 (S.S.A. 1982) ("The RFC to meet the physical and mental demands of a job a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'").

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED

**IT IS SO ORDERED.**

DATED: March 23, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE